14]            JANUARY TERM, 1922.            331

Stark v. Burnham Bros. Brick Co. 176 Wis. 331.

STARK and others, Appellants, vs. BURNHAM BROS. BRICK
COMPANY, Respondent.

*December 15, 1921—March 14, 1922.*

*Sales: Written acknowledgment of oral order: Where goods are
to be used: Rights of parties: Cash sales: Measure of damages
upon nondelivery.*

1. A written acknowledgment of a verbal order for goods becomes
   the contract between the parties.
2. A contract for the sale of brick to one erecting a building for
   a packing company and providing for delivery to such pack-
   ing company contained no implied obligation on the part of
   the buyers that the brick was to be used solely in work to be
   done for that company; and the buyers having paid for all
   brick delivered and tendered payment for the undelivered
   brick, nondelivery was not justified because they insisted on
   their right to use the brick on other jobs, sub. 5, sec. 3315,
   Stats. (providing a penalty for using materials in the con-
   struction of any other building or improvement than that
   for which it was represented they were purchased), being
   inapplicable, since this was not a sale on credit and the con-
   tract did not contain any representation as to where the brick
   were to be used and the seller did not give written notice to
   the owner of the building or improvement under sub. 1 of
   sec. 3315.
3. Under sub. 3, sec. 1684*t*—67, Stats., the measure of damages for
   the nondelivery of the brick was the difference between the
   contract price and the market price at the time delivery was
   demanded, with interest from that date.

APPEAL from a judgment of the circuit court for Mil-
waukee county: JOHN J. GREGORY, Circuit Judge. *Re-
versed.*

The plaintiffs, copartners, were engaged in a general con-
tracting business at Cedar Rapids, Iowa, and they began
doing business as such in Milwaukee in the spring of 1918.
Their first work was at the plant of the Plankinton Packing
Company, and in the fall of that year and for some time
thereafter they maintained their warehouse for equipment
and materials at the yards of that company and for a time
their office also.

On August 29, 1919, a writing was sent by defendant to plaintiffs which is set out in the opinion.

Delivery of bricks by defendant was commenced in December and continued until January 21, 1920, and commenced again about April 20th until May 3d, when about 52 M. brick had been ·delivered. Four several payments were made, paying substantially in full for the brick delivered, but the payments were not simultaneous with the delivery of the several instalments. In February plaintiffs demanded further and immediate delivery of the balance of the brick, but at defendant's request the date of the delivery was extended to May 1st.

At the end of April further demand was made for delivery of the balance of the brick. At about that time the defendant learned that some of the brick delivered at .the Plankinton Packing Company yard had been used by plaintiffs on work being done by them in another part of the city and for somebody other than the Plankinton Packing Company, and on taking the matter up with plaintiffs' superintendent defendant was promised in writing by him that no more of the common brick would be taken to that other job. On May 1st, answering the letter of plaintiffs' superintendent, defendant writes that it will begin brick deliveries, which are "continued, however, on the understanding that the same are for use at your Plankinton Packing Company job and the same are to continue until the total of 360 M. required by you as per your superintendent are delivered and are all to be taken by August 1st."

May 3d plaintiffs answered the preceding letter, .stating, "We want it clearly understood that we are at liberty to use these bricks wherever we please. We purchased 500 M. from you to be delivered at the Plankinton Packing Company, and that is all there is to it. If you do not intend to comply with this contract, advise by mail not later than the 5th of this month."

May 11th defendant answered the preceding letter, stat-

ing, in substance, that its position is that the brick were ordered for delivery at the Plankinton Packing Company for work to be done at that plant for which plaintiffs had contracts on August 29th. That the defendant stands ready to deliver such brick as may be required for the completion of that job or jobs not exceeding the balance of the contract, and also saying, "We will not deliver any brick at that job under the order of August 29, 1919, for use by you anywhere else than at the Plankinton Packing Company. We feel that this states our position, and unless we hear from you in regard to the matter by the 20th will take it that you do not agree with the above, that you intend to breach the terms of the order and thereby abandon your rights thereto."

On May 20th plaintiffs sent defendant a certified check for $5,410.20, the amount at the contract price for the balance of the brick under the order of August 29th, and demanding delivery of the brick. The following day defendant returned and refused to accept the check, referring to the position taken in the above quoted letter of May 11th. The price of brick had been rising during the winter and spring and was, at the time of this correspondence in May, $18 per M.

June 8, 1920, this action was commenced to recover the difference between the contract price of the undelivered brick and the market price thereof; defendant asserting a breach of the contract by reason of the foregoing situation on the part of the plaintiffs and denying any breach on its part.

At the close of the plaintiffs' evidence the trial court granted defendant's motion for a judgment of nonsuit, basing it upon the grounds that the plaintiffs, by using the brick in another building, breached the contract on their part and for that reason could not maintain this action, and there being an expressed willingness on the part of the defendant to deliver brick at the Plankinton Packing Company for use

in work to be done for that company, there was no breach on its part. From the judgment of nonsuit plaintiffs have appealed.

*Orlaf Anderson* of Milwaukee, for the appellants.

For the respondent there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish,* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

The following opinion was filed January 10, 1922:

Eschweiler, J.   The writing of August 29th, accepted as it was by plaintiffs, became the contract between the parties.   It reads as follows:

"Gentlemen: In accordance with the verbal order given our Mr. H. this a. m., we are today entering your order for 500 M. common brick at $12 per M. net delivered to the Plankinton Packing Company, Milwaukee.   It is understood that all. these brick are to be taken by you within six months from date."

We think it plain and unambiguous upon its face, and upon payment or tender of payment by plaintiffs to the defendant for the purchase price of such brick the plaintiffs became entitled to have the same delivered to them at the place designated in the contract.   Upon payment the bricks became the property of the plaintiffs, and the defendant could have no concern with what was done with them subsequent to delivery and such vesting of title.

The contract was evidently one for the delivery of the brick by instalments.   It is immaterial, however, whether the duty to pay for the same did not arise until completion of the entire delivery under sec. 1684t—42, Stats., or arose for each instalment as delivered, under sub. 2, sec. 1684t—45, because for the brick actually delivered payments were made and accepted without question from time to time, and as to the undelivered balance of the order a tender for the full amount thereof was made by certified check, and no question raised as to the sufficiency of that as a tender.

Stark v. Burnham Bros. Brick Co. 176 Wis. 331.

Neither from the face of the contract nor from the testimony in the record can we construe this contract as containing an implied obligation on the part of the plaintiffs that the brick therein specified are not only to be delivered at the Plankinton Packing Company's yard but are to be used solely in work to be done by the plaintiffs for that company.

It is urged by defendant that, inasmuch as sub. 5, sec. 3315, Stats., provides for a penalty for any person furnishing materials under a contract who shall purchase such materials on credit representing at the time of making the purchase that the same are to be used in a designated building or other improvement, and thereafter use said materials in the construction of any other building or improvement than that so designated without the written consent of the seller of the materials, such statute should be by implication considered a part of the contract, and that therefore the use by plaintiffs, or claim by them of right to use these brick for other work than that done for the Plankinton Packing Company, must be considered a breach of their contract obligation.

This contract was not a purchase upon credit, nor does the contract contain, even when read in the light of the surrounding circumstances, any representation that the same are to be used for any particular work or improvement for the Plankinton Packing Company by plaintiffs. Evidently it was not so considered at the time by the parties, because by sub. 1 of the same sec. 3315 a materialman situated as was the defendant here is required, within thirty days after furnishing the material for any specific building or improvement, to give written notice of such undertaking to furnish materials to the owner of the building or improvement. The record is silent as to any such notice having been given by the defendant to the Plankinton Packing Company in accordance with such provisions, and we cannot indulge in any presumption that such notice was given.

We are constrained to hold, therefore, that the plaintiffs were acting strictly within their legal rights under this contract at the time they made the tender for the balance of the undelivered brick on the contract price, and the defendant was not justified in then refusing delivery thereof as it did.

It is undisputed that the market price at the time of the tender was $6 per M. more than the contract price. It is conceded that there were 447,850 bricks undelivered. Their product, amounting to $2,687.10, together with interest thereon from May 20, 1920, measured the damages for which plaintiffs were entitled to judgment. This is the measure of damages under the statute (sub. 3, sec. 1684t—67). *Page Woven Wire F. Co. v. Staudenmayer,* 174 Wis. 154, 182 N. W. 746.

*By the Court.*—Judgment reversed, with directions to enter judgment for the plaintiffs for $2,687.10, with interest from May 20, 1920.

A motion for a rehearing was denied, with $25 costs, on March 14, 1922.